UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.  Case No.: 8:15-cr-356-T-36CPT

TIMOTHY MUNRO ROBERTS
_____/

**ORDER**

This matter comes before the Court on the Defendant's Motion for Compassionate Release Seeking Home Confinement or Other Relief (Doc. 175), filed on June 1, 2020. In the motion, Defendant seeks release to home confinement[1] or to time served pursuant to section 603 of the First Step Act due to COVID-19 concerns.[2] The Government filed a response in opposition. Doc. 178. A hearing on the motion was held December 16, 2020.[3] The Court, having considered the motion and being

---

[1] Designation decisions are committed solely to the Bureau of Prison's discretion. *See, e.g., United States v. Calderon*, 801 F. App'x 730, 731 (11th Cir. Feb. 24, 2020) (district courts lack jurisdiction to grant early release to home confinement pursuant to Second Chance Act, 34 U.S.C. § 60541(g)(1)(A)). Section 3624(c)(2) grants the BOP with the exclusive authority to determine an inmate's place of confinement. *United States v. Alvarez*, No. 19-cr-20343, 2020 WL 2572519, at *2 (S.D. Fla. May 21, 2020) ("Based on the clear statutory language of 18 U.S.C. § 3624(c)(2) and § 12003(b)(2) of the CARES Act, this Court has no authority to grant Defendant's request for placement in home confinement."). Thus, even if Defendant could meet his burden of establishing a compelling and extraordinary reason supporting a reduction in sentence, the district court is without authority to grant the relief of home confinement.

[2] Coronavirus disease 2019, known as COVID-19, is the illness caused by the SARS-CoV-2 virus. On March 11, 2020, the World Health Organization declared COVID-19 a pandemic.

[3] A hearing on the motion was initially scheduled by the Court for September 9, 2020. Doc. 184. Defendant moved to continue the hearing to consult and hire an expert to respond to the Government's expert. Doc. 185. The Court granted the motion, and the hearing was rescheduled to October 30, 2020. Docs. 186, 188. Defendant filed a second motion to continue, which was granted by the Court. Docs. 189, 191. The hearing was rescheduled to December 16, 2020. Docs. 191, 192.

fully advised in the premises, will deny Defendant's Motion for Compassionate Release.

I.   BACKGROUND

On January 9, 2017, Defendant, Timothy Munro Roberts, pleaded guilty to Count Five of the indictment charging Defendant with wire fraud in violation of 18 U.S.C. § 1343. Docs. 79, 83. Defendant was sentenced on March 16, 2018, to a term of eighty months' imprisonment, thirty-six months of supervised release, and other mandatory conditions. Doc. 161. Defendant, who is 50 years old, is currently incarcerated at Yankton Federal Prison Camp located in Yankton, South Dakota. He has served less than half of his sentence and is scheduled to be released from prison on February 18, 2023. *See* BOP Inmate Locator at https://www.bop.gov/inmateloc/.

On June 1, 2020, Defendant filed the instant Motion for Compassionate Release Seeking Home Confinement or Other Relief (Doc. 175), requesting modification of his sentence due to the COVID-19 pandemic, coupled with his medical conditions. *Id.* at 24. Defendant alleges he suffers from Hepatitis C, which is in remission, and he has titanium implants in his mouth that cause him to be immunocompromised making him more vulnerable to contracting COVID-19 and suffering more severe consequences if he contracts the virus. *Id.* Defendant states that he was involved in a Jet Ski accident in 1998 which required surgery to remove 16 of his teeth and have his gum tissue sewn over his broken bone in his jaw. *Id.* at 4. As a result of the accident, he was placed in intensive care due to compromised breathing. *Id.* Several years later,

Defendant underwent reconstructive jaw surgery wherein titanium implants were placed in his mouth. *Id.*

The Government responds that the Bureau of Prisons ("BOP") continues to take significant measures to protect the health of the inmates in its charge. Doc. 178 at 4. Specifically, the BOP limits internal inmate movement, strongly encourages the use of face masks, and enforces social distancing. *Id.* at 5. The BOP quarantines all asymptomatic inmates for a period of at least 14 days, and places symptomatic inmates in isolation "until they test negative for COVID-19 or are cleared by medical staff[.]" *Id.* at 5–6. Additionally, the facility limits group gatherings "with attention to social distancing to the extent possible," and monitors staff temperatures prior to entry. *Id.* at 4–5. Further, all social visits are suspended, along with facility tours; and those who require access (such as essential service providers, certain lawyers, volunteers, and contractors) are screened for symptoms. *Id.* at 6.

The Government argues that the motion should be denied because Defendant fails to provide an extraordinary and compelling reason to permit his early release from prison. Doc. 178. As a preliminary matter, the Government contends that this Court lacks authority to place Defendant in home confinement. *Id.* at 10. Next, the Government argues that Defendant is generally healthy and fails to carry his burden of demonstrating his medical conditions fall within one of the categories justifying a reduction in his sentence. *Id.* at 15–21. Finally, the Government submits that even if Defendant could establish an extraordinary and compelling reason for compassionate release, the section 3553(a) factors weigh against granting release. *Id.* at 22.

## II. LEGAL STANDARD

Pursuant to 18 U.S.C. § 3582(b), a judgment of conviction that includes a sentence of imprisonment "constitutes a final judgment and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (internal quotations omitted). Those limited circumstances are provided under 18 U.S.C. § 3582(c)(1)(A)(i). Effective December 21, 2018, the First Step Act of 2018 amended section 3582(c)(1)(A) by adding a provision that allows prisoners to directly petition a district court for compassionate release. That provision states:

The court may not modify a term of imprisonment once it has been imposed except that—

(1) in any case—

> (A) the court, upon motion of the Director of the Bureau of Prisons, *or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier*, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> > (i) extraordinary and compelling reasons warrant such a reduction; or
> >
> > (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other

>> person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission; and
>
> (B) the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure. . . .

18 U.S.C. § 3582(c)(1) (italics reflecting amendment under First Step Act). Accordingly, a court may reduce a sentence upon motion of a defendant provided that: (1) the inmate has either exhausted his or her administrative appeal rights of the BOP's failure to bring such a motion on the inmate's behalf or has waited until 30 days after the applicable warden has received such a request; (2) the inmate has established "extraordinary and compelling reasons" for the requested sentence reduction; and (3) the reduction is consistent with the Sentencing Commission's policy statement. *See id.* Courts are to consider the § 3553(a) factors, as applicable, as part of the analysis.[4] *See* §3582(c)(1)(A).

---

[4] These factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines; (5) any pertinent policy statement issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

The defendant generally bears the burden of establishing that compassionate release is warranted. *See United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013) (providing that defendant bears the burden of establishing a reduction of sentence is warranted under § 3582(c) due to a retroactive guideline amendment); *United States v. Heromin*, Case No. 8:11-cr-550-T-33SPF, 2019 WL 2411311, at *2 (M.D. Fla. June 7, 2019) (citing *Hamilton* in the context of a § 3582(c) motion for compassionate release).

### III. DISCUSSION

#### A. The Government does not Contest that Defendant has Satisfied the Administrative Exhaustion Requirement.

Defendant first filed an administrative request for reduction in sentence on March 31, 2020, which was denied by the Warden of Yankton on April 2, 2020. Doc. 175. Defendant then requested a reversal of the Warden's denial but was denied again on April 20, 2020. *Id.* Defendant filed his motion for compassionate release in this Court on June 1, 2020—more than thirty days after he was denied administrative relief. *Id.* Therefore, the Court finds Defendant has exhausted his administrative remedies; the Government does not argue to the contrary.

#### B. Defendant Fails to Present an Extraordinary and Compelling Reason for Compassionate Release.

Even though Defendant exhausted administrative remedies prior to filing his motion, his motion nevertheless fails. In its existing policy statement on compassionate release, the Sentencing Commission identifies four categories in which extraordinary and compelling circumstances may exist: (1) the defendant's medical

condition; (2) the defendant's advanced age (at least 65 years old); (3) family circumstances; and (4) other reasons. U.S.S.G. §1B1.13, cmt. n. 1(A)–(D). Only the first and fourth provisions are potentially relevant here, because Defendant is fifty years of age and does not allege any extraordinary family circumstances.

Under the first factor, a defendant's medical condition may provide an extraordinary and compelling reason to support a reduction in sentence when the defendant is: (1) suffering from a terminal illness, *i.e.*, a serious and advanced illness with an end of life trajectory; or (2) suffering from a serious physical or medical condition that substantially diminishes his ability to care for himself within the prison environment and from which he is not expected to recover. U.S.S.G. §1B1.13, cmt. n. 1(A). Defendant alleges he is immunocompromised and therefore at a higher risk for contracting COVID-19. Doc. 175 at 9. Even if he had medical records or testimony to demonstrate that he is immunocompromised, which he does not, such medical condition does not constitute a terminal illness and does not diminish Defendant's ability to care for himself in the prison setting. Therefore, Defendant fails to demonstrate an extraordinary and compelling reason to warrant release under this factor.

The fourth factor, which has been described as a catch-all provision, applies when, "[a]s determined by the Director of the [BOP], there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in the subdivisions (A) through (C)." U.S.S.G. §1B1.13, cmt. n.

1(D). On the facts before the Court, Defendant similarly fails to demonstrate an extraordinary and compelling reason to warrant release under this provision.

Defendant argues that his status as immunocompromised, because of leaking titanium implants, places him at a higher risk for contracting COVID-19 and suffering more severe consequences as a result. In his motion, Defendant references an article in the EPMA Journal that discusses how leaking titanium implants can cause or contribute to a compromised immune system. *Id.* at 4. However, he fails to proffer any medical testimony to validate his claims. There is no record evidence that his titanium implants are leaking or that he is immunocompromised because of them. In his motion, Defendant also references a bone marrow transplant in connection with his jaw reconstruction surgery, but at the hearing counsel conceded it was a bone graft, not a bone marrow transplant. There is no evidence to support that a bone graft would cause him to have a compromised immune system.[5] Thus, Defendant fails to demonstrate that anything about his medical condition makes him more vulnerable or places him at a higher risk of severe reaction should he contract COVID-19.

At the hearing, defense counsel stated Defendant was unavailable to testify because the facility where Defendant is incarcerated is on lockdown due to COVID-19. The BOP's website is currently reporting that Yankton FPC has 13 inmates and 13 staff members who currently have COVID-19. (https://www.bop.gov/coronavirus/

---

[5] Defendant initially sought a continuance of the hearing to obtain medical expert testimony to respond to the Government's expert regarding the issue of a bone marrow transplant. At the hearing, Defendant acknowledged the procedure was a bone graft, not a bone marrow transplant, and thus it was unnecessary to have medical testimony on this issue.

last accessed December 18, 2020). At the hearing, the Court noted that on the day prior to the hearing the BOP website reflected 7 inmates and 12 staff members had tested positive. Thus, the number of COVID-positive cases has clearly increased, consistent with defense counsel's statement. The fact that the facility is on "lockdown" demonstrates, however, that the BOP is being proactive in response to the increase in cases. Moreover, general concerns about possible exposure to COVID-19 do not alone meet the criteria for an extraordinary and compelling reason under § 3582(c)(1)(A) and U.S.S.G. §1B1.13, cmt. n. 1. *See United States v. Luster*, 2020 U.S. App. LEXIS 34965, at *3 (11th Cir. Nov. 04, 2020) (finding that "generalized allegations concerning COVID-19 did not warrant release" given defendant's lack of evidence concerning the severity of his conditions); *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release."); *United States v. Eberhart*, No. 13-cr-313-PJH-1, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020) ("General concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence."). Thus, Defendant's general concerns of the possibility of contracting COVID-19 are insufficient to support a reduction in his sentence.

### C. Section 3553 Factors Weigh Against a Reduction in Sentence.

Even if Defendant was able to establish an extraordinary and compelling reason, the Court must make a finding that Defendant would not be a danger to the safety of any person or the community. *See* USSG § 1B1.13(2). Here, consideration of

the § 3553(a) factors[6] counsels against a reduction in sentence or compassionate release. Defendant has served only a fraction of his eighty-month sentence, this is his second financial fraud conviction, and he committed this crime while he was on supervised release for his first conviction. Defendant's fraudulent activity resulted in more than five million dollars being defrauded from many investors in the Tampa Bay area. Doc. 178 at 2. Multiple victims testified that due to Defendant's fraudulent conduct, they suffered substantial losses affecting their plans to retire, made changes to their living arrangements, and became insolvent. *Id.* at 3. Consideration of the § 3553(a) factors weighs against a reduction in Defendant's sentence. Defendant committed a serious crime—twice—and he fails to proffer any evidence to demonstrate he is not likely to recidivate. The Court finds that a reduction in Defendant's sentence would be contrary to the § 3553(a) factors, and consideration of the sentencing factors weigh against his release. Accordingly, it is hereby

**ORDERED**:

Defendant's Motion for Compassionate Release Seeking Home Confinement or Other Relief (Doc. 175) is **denied**.

**DONE AND ORDERED** in Tampa, Florida on December 18, 2020.

*Charlene Edwards Honeywell*
Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any

---

[6] *Supra*, note 2.